Next case, Ocean County Landfill Corp v. EPA I keep checking my glasses here, I did the same thing. If you check the statistics, the people who are on that side usually win. So I was thinking that maybe in the first argument, somebody chose that sign because they wanted to win. That's only statistics. That's a joke. That's a joke. The old war was that if you were the plaintiff, you were the plaintiff, you always sat next to the jury box. And the appellant was to sit next to the jury box. Unfortunately, there's no jury box. The jury's out. Okay. Good afternoon. My name is Sandra T. Ayers. I'm with the firm of Skrinski and Hollenbeck. We're counsel for petitioner, Ocean County Landfill Corporation, sometimes referred to as OCLC. And with the court's permission, I'd like to reserve five minutes of my argument time for rebuttal. Thank you. The first thing here is, you know, to what extent we even have jurisdiction. I mean, you make much of the fact that the EPA describes this common control determination as final, but when you look at it, that appears to be just one step in the process, a preliminary step, and an important step, but still just a step in the licensing process. Has New Jersey issued a permit? No. Why isn't that necessary, and then the EPA can issue or deny it after that? Well, EPA has directed the New Jersey Department of Environmental Protection to proceed and enforce the single source determination. But they don't have to do that. They can do whatever they want, and the EPA could then decide to let it go. We're not there yet, are we? I believe the EPA's briefing indicates to the court they have full statutory authority to direct the DEP to do what EPA says it must do. Well, but even apart from that, once we are under 7661 D.C., there is a statement that no objection shall be subject to judicial review until the administrator takes final action to issue or deny a permit. I will point out, Your Honor, that this issue arose during the course of an MRPC permitting process, not an Ocean County Landfill Corporation permitting process. In effect, we were like a third party. But the third party provision you cite isn't a third party. It's the ability of a third party to ask the EPA to object to something. I mean, the fact that you — I don't know what bearing that has on the matter. How does the fact that you view yourself as a third party impact the applicability of sub C? Because we weren't the permittee in the process, and we weren't at the stage, at the final stage as indicated. But by analogy, isn't Judge — Where is MRPC? Pardon? Where is MRPC? They were given notice of this litigation and chose not to participate. May I — How does being a third party help on this jurisdictional question? Well, it helped me in terms of the rule indicating that it was the permittee whose permit was at issue that the provision that EPA was citing applied to, and we weren't that permittee. And in fact, if you're a third party, it says you get immediate review pursuant to the statutory provision we relied upon. But we also — That immediate review is when you say to the EPA as a third party, please object to this, and they don't. Then you have review. That's under sub 2, isn't it not? Well, we — The administrator to object, right? I didn't read it as only going one way, but, you know, that's fine. I would like to get at we have other reasons for believing the court has jurisdiction, and that is that the key is finality. And as to the subject matter, which is single source designation, there's finality. There's no question there's finality. But that's an issue. It's finality as to the EPA has determined that there's a — under common control. Right? But the only finality flows from the issuance or denial of a permit, doesn't it? No. There are, of course, under case law, there are applicability decisions that, in fact, in the Starr Enterprise, it's a case in point where the applicability leads, then, to certain permit ramifications, but those permit ramifications are not concluded before the court stepped in because the underlying decision, the basic decision, is not mooted out or changed by the permit requirements applicable to it. This is a — How do you satisfy the immediate legal consequences test that this action by them, by the EPA, this letter, has immediate legal consequences? Well, they've determined us to be under a single source, and a single source has certain obligations relative statutory as well as permitting obligations as to the source. And we are responsible under the statute as a part of the source for many kinds of potential, albeit they are potential, ramifications as a result of that decision, not simply the permitting ramifications. This whole — this letter from EPA — The May 11 letter. — arose, the May 11 letter arose as a result of the — let's call it the gas to energy facilities permit application for repermitting. That's how it arose, okay? It didn't arise as a result of anything that the Ocean County Landfill Corporation, your client, did, correct? No. Correct? That's correct. Okay. Now, what's the status of your permit? We had submitted — I believe it was shortly after or around about the May 11 date. We had submitted an application for renewal of our Title V permit. Everything at DEP is on hold. So you submitted it to the New Jersey DEP? An application to renew our Title V permit. And that's pending? Well, it's pending. It's there. But you said operating under your permit is still effective, in effect, correct? We have an application shield. We've timely filed the application for renewal, so we continue — It's still on hold? Waiting for this court to make a decision under common control. So you have the permit application, the repermitted application by MRPC, and you're now telling us that there's a new repermitted application of OCLC, your client, and in the midst of all this came the May 11 letter from the EPA and then this appeal. Right. Now, this petition for review. Right. Not only are you going to have an opportunity to challenge any interpretation by New Jersey based on this letter, but MRPC is going to have an opportunity to challenge that at a later date. Well, obviously, there's no point in going into state court for an EPA decision. DEP, do it. DEP is not going to defend that. As we put in the record recited in our papers, DEP's initial decision was that it wasn't under common control. And the reason that the MRPC OEC with its OEC modification was held up is because EPA wanted analysis in writing. We don't know that. EPA could change their mind on this. Congress could change the statute. There could be a new administration that could say, you know, we're going to change this whole sole source standard under common control. We don't know that. And the state may not even buy into it. The state, pardon? The state may not. I mean, EPA's made this determination, but the state may decide it doesn't go along with it. It's happened elsewhere. Well, I think the record indicates, Your Honor, that the state, in fact, according to EPA, the state has agreed to implement whatever they decide. Okay. Well, then we still go back to Judge Fischer's question. Yeah. The other aspect of it is I think it's very clear from the briefing by EPA they have no intention of changing their mind, that this is their decision. This is what they ordered DEP to do. We asked for reconsideration. They said no. They said no, no. We're not going to look at these facts again. But that's their view on the issue. But they have not vetoed or granted a permit, have they? Not a permit. But the permit's going to flow from this decision. Everything in the permit is objectionable. It will be objectionable because it flows from the single source designation. It's not as though this is a permit that's going to be issued and someone's condition is the permit doesn't like. This is everything in the permit is going to be objectionable because it's predicated on this single source designation. What case supports your view that we have jurisdiction? Well, we thought that Star Enterprise supported your view. In that instance, it was a statutory construction case. I'm sorry. Which case did you say? They conceded there that it was final agency action. Well, you submit your own. It was not a determination. It wasn't a holding in the case. I read the prior language of the court to say the court was in agreement with that. Now, as you know, this court can disagree just because parties concede does not mean that the court, in effect, does not have to reach a decision on jurisdiction. Well, it said, as the parties concede and as the facts detailed above clearly indicate, the two conditions set forth in Bennett have been met. Right. Right. Right. I was referring to its conclusion that the condition for the finality and ripeness had been met. That was ripeness more than not jurisdiction. Yes, I believe that case had to do with ripeness. And we believe that that supports our case and our claim that this court does indeed have jurisdiction, and we believe the matter is right because it's not going to be mooted out. I mean, no condition is going to moot this issue because all of the conditions are going to flow from this basic preliminary, in the nature of an applicability decision. And as this court knows, there are cases that say that this court has jurisdiction to review applicability decisions and also to review decisions pre-enforcement. Do you want to use some of your rebuttal time to address the merits issue? Because your time is now up. Oh, I'm sorry. I wasn't watching that. Yes, I would. All right. Why don't you give us a two-minute rundown? I think it's well briefed, but give us two minutes and we'll proceed with it. Well, I think my argument did follow the briefing. I think that only the owner-operator of an emission unit can be held accountable for controlling emissions and for permitting. But that's not really the point. The point is that the statute has a common control standard. As opposed to common ownership. Right, as compared to being under common ownership or the liability test. So we would have to disregard the standard set forth in the statute and the decisions that give the EPA pretty good authority to make that determination. Your Honor, I believe that when you're interpreting a definition and that EPA enabling EPA to combine stationary sources. For permit. For permit. For permitting. For permitting is in the statute and for the regulatory programs is in the regulations. And the language is substantially similar in the definition of stationary source in the regulations. That's a, in a definition appears a, you can do this, you can combine, if they are under common control. I don't believe that that kind of qualification in a definition can be interpreted as setting aside all of the provisions in the operative provisions of the law that indicate that only an owner or operative can be held responsible. Well, I think that's exactly right. And what you're saying is liability is different from permitting. Well, liability comes from permitting. If you're permitted, if you're permitted for the facility, as the, as the Alturi instance indicates, if you're permitted for the facility, you have liability for compliance of the facility. Not necessarily. And we believe that according to EPA's theory, then by virtue of drawing these single source boundaries, they can actually render nugatory the provisions of the Clean Air Act that says only an owner or operator can be held accountable and liable for, you know, for the control and for liability purposes. So actually this is, I think, this case graphically falls into the category when the United States Supreme Court and Christine Todd Whitman v. Trucking said, and I quote, Congress does not alter the fundamental details of a regulatory scheme in ancillary provisions. It does not, one might say, hide elephants in mouse holes. And that's exactly what's going on here. Through this common control caveat, EPA is saying I can draw, I can draw boundaries, single source status, and lo and behold, you've got non-owner operator, non-owners, now responsible for an emission source. I think there's an 11th Circuit case law in Sierra Club v. EPA from the 11th Circuit that addresses this issue, but we'll take that from your briefing and we'll hear from you on rebuttal. Thank you very much. Thank you. Good afternoon. My name is Amanda Schaffer-Berman. I'm with the United States Department of Justice representing respondent EPA Region 2 here. Part of the problem here was that you've got a May 11, 2009, letter that talks about a common control determination being, quote, final, close quote. Yes. Is that what is normally done, or was that just a misspeaking, or that's the way we think about this interim step or something? Your Honor, it wasn't meant in the sense of this is final agency action, and yes, I'm sure counsel would go back and say, don't use the word final so we don't have that confusion. It was simply meant in the sense of this is the end of this step of the permitting process. We're going to move to the next step. There have been a lot of back and forth between EPA and the petitioner here. There have been meetings. There have been calls. There have been letters. And this was EPA's way of signaling we have made a decision on this common control issue. However, we do not believe that that decision is final agency action. Well, why has nothing happened since then? Why shouldn't that normally be viewed that way, and then New Jersey do what it has to do? Well, Your Honor, EPA can't answer the question as to why New Jersey hasn't taken action. Because it hasn't, EPA is considering moving forward with the permitting process itself. That is open to EPA where New Jersey hasn't taken action. EPA does understand that New Jersey was hesitant to act while this litigation was pending. However, I think it might be helpful if I explain what the course is going to look like going forward, both on the state side and if EPA takes it over. So if New Jersey does proceed to modify or reissue the permit, pursuant to the common control determination, then OCLC would be invited to work with the state to prepare a draft permit. It'll have notice and the opportunity for a hearing on the draft permit. It can then petition EPA to object to that draft permit, and it can challenge any refusal by EPA to do so in federal court. Immediately. Yes. And then it can also challenge the final permit issued in state court. Now, if New Jersey does not act and EPA decides, yes, we have to take this process over and move forward, then EPA is going to have to decide if it wants to terminate, modify, or revoke and reissue the permit. But there is no permit for it to do. I mean, it's not a permitting agency. So doesn't New Jersey have to take action? No, Your Honor. Under Part 71, there is a federal Title V permitting program pursuant to which EPA, where a state fails to take action, can then take over the permitting process itself. And that may be what happens here. And if that does happen, OCLC will get notice and the opportunity for a hearing on the initial decision to even reopen the permitting process. That hasn't even happened yet. If the process proceeds beyond that, OCLC and also the GTE facility would have the chance to work with EPA to draft the permit. They can then request a hearing on any draft permit that EPA prepares and issues, and then they can appeal any final permit that is issued both first before the EAB, the Environmental Appeals Board, and then in federal court again. And then the common control issue is opened again? There are multiple points in both processes at which the common control determination could be challenged or in some way reopened. Ms. Berman, isn't what OCLC is really saying, though, is look, in light of this May 11th letter, we see what the EPA has said about common control. And we don't want to go through a permitting process where we go through the permitting, whether it be with New Jersey or with the EPA, where we try to say that there should not be common control when we know we're going to lose based on that letter. So why shouldn't we have the opportunity as a third party, not as the original permittee because the gas to energy facility was the original permittee, why shouldn't we have the right as a third party to be able to challenge this at this time? Well, Your Honor, I think there's a couple answers to that question. First, it's simply not the way the statutory scheme is set up. The scheme is pretty clear that what is open for review is the issuance or denial of a permit or EPA's decision not to deny a permit where requested. Second, the burden of having to go through the administrative process doesn't make something final agency action there. Except when you say it's final. Well, Your Honor. If the EPA had said this is our current position, we're glad to discuss this further with the applicants and with the State of New Jersey, that might be different. But when you say this is final and we're not going to change our position, doesn't that make this question a little bit different? I don't think so, Your Honor. I mean, EPA is unlikely to change its mind as to its view of the common control status. However, there's going to be multiple steps at which new information could be submitted. The issue can be revisited. So there are multiple opportunities for more process on this issue going forward. And it really is the final permit that's going to tell whatever court is looking at this, what are the consequences of this common control decision? What does this permit even look like as a result of it? Doesn't this form of pre-enforcement review make a lot of sense fiscally to the government as well as to the applicant? Well, Your Honor, we actually think it slows down the permitting process considerably in a way that is not to the benefit of anybody involved. We think it makes a lot more sense to take a decision like this, move forward with the permitting process, have a final permit issued, and then visit this. But it's sort of like the concept of qualified immunity or whatever. You need to have that determination before you spend all the time, energy, and money going forward with regard to a trial or a claim. Here, if they prevail ultimately with respect to common control, and their claim is, hey, look, we got sort of dragged into this, don't want to be, why can't they have it determined now at the outset whether we should be or should not be involved in this process? And it would seem that that would be a significant savings of time and certainly more efficient. Well, Your Honor, it simply isn't the consummation of the agency decision-making process, and there are no immediate legal obligations that this determination imposes on the petitioner. And those are the standards for final agency action. Was OCLC party to the proceedings to date? Did it have the opportunity to adduce evidence with respect to this common control? Yes, it had multiple opportunities. I was thinking in one sense it might be unfair for us to be making this decision now because, as you say, the permitting processes that would ensue would permit further facts to come forward. But if everybody's had a complete opportunity to develop the record on this, maybe it is judicial economy for us to decide this issue now. Well, Your Honor, they have had ample opportunity to argue this issue with EPA, as we detailed in our briefs. There are a number of meetings, letters, position papers, et cetera. However, we don't think it makes sense to determine this issue now, not only because we do believe the final agency action point is an important legal principle for EPA to be able to move through a process without being interrupted constantly, but also, I apologize, I lost my train of thought there. Well, I was saying that why it doesn't make sense to decide it now because of all the possible hearings going forward. If they had the full opportunity to develop the facts, it would be judicial economy, wouldn't it? Well, Your Honor, that actually raises an interesting question because even if this Court were to consider the merits of the common control determination and come to some conclusion here, that doesn't change the fact that OCLC and the GTE facility can still challenge a final permit that reflects or doesn't reflect the common control determination. So if this Court were to hold, yes, we agree that this common control determination is reasonable, it's still going to go through the permitting process with the opportunities for further process and further hearing of the issue. But if we hold that it's unreasonable, well, that could be, I mean, they'd probably defer to our determination, I would think. It's an interesting issue of whether it would be raised judicata. But again, we think this shows that the appropriate time is where we've got a permit to look at. Go ahead. I'm sorry, finish that. To see what the real ramifications of this decision are, and that's also why we think it's not right for review even if there were technically jurisdiction here. You mentioned that in response to one question, that, well, one of the reasons to wait to the end is to avoid a lot of interruptions along the way. Yeah, in litigation, the type you see in civil litigation, there's a lot of reason that people may want to have interruptions in order to, for a lot of tactical reasons. Here, it seems like it's just the opposite, that you want a decision as quickly as possible if you are an applicant or are involved with an applicant, and therefore there's no real incentive to have interruptions unless you really think that something's being done that affects you negatively and you need to have it resolved before you go further down the road. Well, Your Honor, I think there is a bit of an incentive. The regulations provide that there's an application permit shield. So once petitioner or the GTE facility has applied for a new permit and the application is deemed to be complete and timely, their old permit continues to operate until a final new permit is issued. So dragging this issue out actually does get the old permit, the old separate permits to apply for a longer period of time. So there is a little bit of an incentive. Now, how about the argument of your colleague that this permit brings legal consequences immediately because it has implications on liability, et cetera, et cetera. Would you address why there aren't immediate legal consequences flowing from this determination as to common control? Certainly, Your Honor. It's because only the permit has those consequences. There's no liability questions at all until there is a final permit permitting these two facilities in some way jointly saying this is the emissions limitation for the two facilities. There's no consequences until that point in time. If the Court would like me to move to the merits with my remaining time. If the Court does determine that the letter is final agency action and right for review, we believe that EPA's conclusion was plainly reasonable here and subject to deference. OCLC's challenge appears to be two-pronged. First, they argue that the analysis that EPA employed, the common control analysis itself, was ultra-virates. But we believe the question is more properly simply the question of whether EPA has interpreted the undefined statutory term under common control in a reasonable way here. Now, Congress didn't define that term. It left a gap for EPA to fill. However, while the Act doesn't define the term in Section 120, it does clearly identify under common control as a separate category from ownership and operation, providing a defense to penalties where the violation was beyond the control of the owner or operator or an entity under common control with the owner or operator. So Congress is telling us that this is a third category. It's not ownership or operation. OCLC argues, however, that the common control has to be defined as requiring direct actual ownership or operation of one facility by another or its parents. But this proposed definition conflicts with the statute, and it's up to EPA, not OCLC, to define the statutory term. And here EPA has interpreted this term in several places. It's done so in its regulations, not specifically in the permitting context, but it's defined it as the power to direct or cause the direction of the management or policies of a person or organization, whether by contract, control of stock, voting rights. So it says we can look at things like contracts to see if there's common control. And it's also expanded on the definition of under common control in the 1995 Spratlin letter, where it identified a number of factors that it considered relevant to the common control analysis, and it's those factors that EPA applied here. Moving to specifically what factors EPA relied on here, we think there are a number of factors clearly sufficient to find common control. Now, it gets a bit confusing, the corporate structure, and it's laid out on pages 51 and 52 of the joint appendix. But the company that owned the GTE facility was originally formed by the landfill's parents. Similarly, the company that operates half of the engines in the GTE facility was also formed by the landfill's parent. Now, EPA doesn't look at this former ownership as supporting its determination, but it does look at the fact that when that company was conveyed by the landfill's parent to the GTE facility, there was retention of some control over the stock. The stock can't be sold or encumbered without the permission of the landfill's parents. Also, the GTE facility is entirely dependent on the landfill as its only source of fuel. Only gas from the landfill can be used. That shows a high level of interdependency. The GTE facility also has to take all of the gas from the landfill. It can't sell it to anybody else. It can't transfer it to anybody else without the permission of the landfill's parent. But is interdependency the same as under common control? I mean, if it's under common control, whose control is it under? Well, Your Honor, we don't think that EPA has to say it's this particular corporate entity. It could be both of the parents working together. It could be the parent on one side. To use a possibly bad analogy, EPA doesn't have to identify the puppet master. It just has to show that there are a number of strings sufficient for it to be reasonable to conclude that these are under some sort of common control. And here we think that there are a sufficient number of strings showing that these two facilities are closely intertwined, they're interdependent, such that it makes sense to consider them together for permitting purposes. I see that my time has pretty much expired here, so thank you. Ms. Ayers? Ms. Ayers? Let me just make a few points on the jurisdictional issue and then one point on the merits. Jurisdictionally, appreciating the question raised about we go through the whole process and we win on common control, we have to go through the whole process again. Also, as described by EPA's counsel, if New Jersey follows EPA's direction, as it does, it would not follow at risk. If they follow EPA's direction, then we're in state court to appeal the DEP decision, which was made only because EPA told them to. And if they don't follow, then EPA steps in and says, do it. So any way you get at it, we are going to have to eventually address this question of single source status and common control. And the point is that none of, as I said before, all of the terms and conditions of the permit are going to be predicated on this decision, so they're all going to be. The new terms and conditions in the permit, from a practical point of view, are not significant or not great, I should say. At this point, you know, regulations change, the law changes and so forth. The common control single source status is a predicate for all future decisions made with respect to Ocean County Landfill's control of emissions from this now single facility. What's the harm of having this considered together? Well, the first harm is that if we went in for an increase in our permitted emissions, in order to discern whether we tripped thresholds requiring costly controls or offsets, they would add MRPC's emissions to ours. Based on your, I assume somebody's looked at this, do you perceive that's going to be a problem? Well, we're undergoing a large expansion. It hasn't been calculated out yet whether that's going to entail a need to increase what we have as permitted capacity at our fillers. That hasn't been calculated out. As landfill cells close, the gas goes down. As new ones open, the gas goes up. But all those things only flow from your having the permit, right? Yes. And you don't have the permit yet. Well, you're right, but they will be in the permit and they will determine. So I'd say proceed with your expansion really quickly before you have the other permits. I think, Your Honor, the issue that we have is that the permit conditions will be fixed on the basis of this decision. And it's this decision that's going to dictate everything. And even if, for example, EPA adds your new request for increase in your permitted capacity to anything that is permitted, requested at, approved at the facility in the last five years, maybe we dodge that bullet. But EPA is talking about changing that horizon to 10 years, so you don't dodge the bullet. Isn't it within your power to separate out these entities pretty clearly? To undo these things that they say show a relationship? That's the whole reason they want to designate us as a single source. No, no, no. Oh, you mean in the contracts? Yes. Well, that's the next step. I mean, we don't agree, and let me make that clear, that all EPA has to do is find some contractual relationships that they label then a common control relationship. We don't believe that that satisfies the need to find a control. It says control, and a common control means one entity, not two joining together in mutually acceptable contract negotiations. It means one entity that controls both. You have to argue it's unreasonable. Pardon? I said you're arguing it's an unreasonable reading of the statute. I believe it's a reading that's not consistent with the law and the making of, under the law of only the owner-operator. I believe those are the facts that you have to find. What the EPA is saying is that we can put substance over form. Pardon? As the practical results. But the substance has to show control. I mean, you can have contractual relationships between parties, and none controls the other's facility. I think what they're saying is you can still challenge that at some point. You're not precluded from challenging that. That's absolutely right. I don't disagree with that, but we have to go through the whole process of the single permitting and figure that out, and then come back and challenge it, and if we win, then we have to go back again on the individual renewals. You know, that's that. So there really isn't this interruption argument. It really doesn't hold water, because it would be far more efficient from a public and private point of view for the court to get involved now. But there has been a year. Pardon? There has been a hiatus of a year and a half. But nobody's been spending money in that year and a half going through a permit process. Although you're still operating, right? As far as reducing evidence, we gave them all the evidence we had. That would be a benefit to us if we felt we needed more time. We gave them everything we had, and it seems readily apparent to us from that May 11th decision and the record, they're not having it. Because we're like ships in the night, we have different standards that we think apply to this common control determination, and that's what we need the court for. Thank you.